Peake *v.* Estate of Dorwin.

---

ROYAL W. PEAKE *v.* ESTATE OF LYMAN DORWIN.

*Promissory Note.    Payee, Principal & Surety.*

Where the payee of a promissory note, when it became due, made a valid agreement with the principal, for a further delay on the note, for one year after it fell due, without the consent, or knowledge of the other parties to the note, *it was held*, that the agreement discharged all the parties thereto, who stood, with the knowledge of the payee, in the light of sureties.

And if one becomes surety for another, at the request of the creditor, and without the knowledge of the principal debtor, the creditor, *is* bound by all the rules respecting sureties, though the principal debtor is not bound, for the want of a privity of contract between them.    *Talmadge* v. *Burlingame*, 9 Barr. Penn. R. 21.

APPEAL from the decision of commissioners, appointed by the probate court, to settle and adjust claims against the estate of Lyman Dorwin, deceased, in disallowing the plaintiff's claim on a certain note, of which the following is a copy:

"HINESBURGH, Nov. 22, 1845.

"One year from date, for value received, we jointly and sever-
"ally promise to pay John A. Place, or order, eight hundred dol-
"lars, with interest annually."

(Signed)                    "B. & H. BOYNTON,
                            "JEDEDIAH BOYNTON,
                            "LYMAN DORWIN."

(Indorsed)        "JOHN A. PLACE."

Plea, general issue, and trial by jury.

The plaintiff offered in evidence the said note, the execution of which was admitted, and rested.

The defendant then introduced testimony tending to prove, that the firm of B. & H. Boynton, were indebted to one Scofield, in an amount as great as the note in question, and Scofield had agreed to loan to John A. Place, the sum of eight hundred dollars, which sum he, Scofield, was to collect of said B. & H. Boynton; and thereupon, said B. & H. Boynton executed the note in question, and procured the said Jedediah Boynton to sign the same, as their surety to said Place, for the purpose of enabling said Place to procure the money thereon, and if so procured, the same would apply so far, on their debt to said Scofield; and said B. & H. Boynton told Place, he could probably get the money of the plaintiff, and if he had to pay extra for the money, they would repay to him the amount, so as to make the note good to him for the face of it.,

That thereupon, said Place took the note, signed only by B. & H. Boynton, and Jedediah Boynton, and went to the plaintiff, to sell him the note; but the plaintiff, not being satisfied with the names, and said Place's indorsement, declined to give him the money on the note; but told him, if he would get Lyman Dorwin, the deceased, to sign the note, he, the plaintiff, would let him have the money. Thereupon, said Place, without the knowledge of either of the Boyntons, applied to said Dorwin to sign the same, which Dorwin did; and said Place returned to the plaintiff with the note, and plaintiff gave him the amount, less $24,00, which sum, plaintiff charged for the shave on the note, and said B. & H. Boynton, soon after, paid the same sum to said Place; but said B. & H. Boynton had no knowledge that said Dorwin had signed the note, until some months afterwards.

It was also proved, that about the time the note fell due, B. & H. Boynton, without the knowledge of either Dorwin or Place, made a binding and valid agreement, upon good consideration, with the plaintiff, to extend and give further time of payment to said B. & H. Boynton, on said note, for one year, after the same fell due; and there was no evidence of any demand, or notice, to the indorser, Place, of non-payment of said note.

The plaintiff then proved, under objection, that at the time said Place procured said Dorwin to sign the note, as above stated, said

Place, executed and delivered his promissory note to said Dorwin, for $800,00, to be held by said Dorwin, as collateral security for signing said note; which note of said Place, Dorwin's administrator still holds.

The plaintiff insisted, that inasmuch as said Dorwin took said security, that his estate, could not avail themselves of any defence to the note, growing out of said extension of time, by said agreement between the plaintiff and the Boyntons. The court held, that such agreement for extension would not, under the circumstances, discharge Dorwin.

The court directed a verdict for the plaintiff, for the amount of the note and interest, deducting the $24 paid as extra, when plaintiff took the note. To all which decisions and ruling, the defendant excepted.

*Kasson & Edmunds* for defendant,

Insisted, that the liability of the surety, does not depend upon the question, whether the delay has operated to his injury; but that *he is discharged, by the very agreement for delay itself;* and the consequences of such delay, are immaterial. *Fowler* v. *Brooke*, 13 N. H. 240. *Rus* v. *Barrington*, 2 Vesey 543. Also cited in course of argument, Fell on Guarantee, 246–7. *Myers* v. *Wells et al.*, 5 Hill 463. *Talmadge* v. *Burlingame*, 9 Barr. 21.

*Smalley & Phelps* for plaintiff,

Insisted, that the undertaking of Dorwin was that of a *principal*, so far as the plaintiff was concerned, founded upon a valuable consideration, which the estate of Dorwin now holds; and that he cannot be regarded, as the surety of the Boyntons, so as to be discharged, by giving them further time for payment, than was given by the note itself.

And cited, in course of the argument on other points raised, 2 Lead. Cases in Eq. 377. *Bank of Ireland* v. *Beresford*, 6 Dow 238. *Smith* v. *Winter*, 4 M. & W. 454. *Exparte Gifford*, 6 Ves. 805. *Shattuck* v. *Wilder*, 6 Vt. 334. *Chilton* v. *Robbins*, 4 Ala. 223. *Eastman* v. *Foster*, 8 Met. 19.

The opinion of the court was delivered by

ISHAM, J. The note in this case, was at first executed by B. &

H. Boynton, as principals, and Jedediah Boynton, as surety, payable in one year, to John A. Place. The object of its execution, was to raise money thereon, from the plaintiff, for the ultimate benefit of B. & H. Boynton. The note, thus signed, was refused by the plaintiff, but he agreed to advance the money thereon, if William Dorwin, the intestate, would also become obligated for its payment. At the solicitation of Mr. Place, Dorwin signed the note, as joint maker, without the knowledge of the Boyntons, on receiving the obligation of Mr. Place, to indemnify him therefor. We learn from the case, that about the time the note became payable, a valid and binding agreement was made by the plaintiff, with B. & H. Boynton, for a further delay on the note, for one year after it fell due, without the consent, or knowledge, of the other parties to the note. Evidently, that agreement discharged all the parties thereon, who stood, with the knowledge of the plaintiff, in the light of sureties. Whether the plaintiff knew that Jedediah Boynton was surety, or not, does not very definitely appear in the case; but it is obvious, that he knew that Dorwin signed the note as surety, and which he required, before he would make advances upon it. The act of Dorwin, in signing that note at the request of Place, did not create the relation of principal and surety, between him and the Boyntons; but, as the money was raised for their benefit, very slight acts, recognizing that relation on their part, would place him, in the light of surety for them. Without some evidence, however, of that character, the relation does not exist, and Dorwin, on payment of the note, could not have sustained an action against them for money paid; for no one can make another his debtor, by paying his debt, without a request, either express, or implied. His signing the note, however, did not vary or alter, the obligation of the Boyntons. It was their duty to pay the note; as much so, as if the note had been taken, and the money advanced thereon, when first offered to the plaintiff by Place. In no point of view, did Dorwin stand as principal, for he had received no consideration, for giving the note. In his relation to the plaintiff, he was a mere surety, or guarantor, for the payment of the debt, by the other parties on the note; and the plaintiff was bound so to regard him, and without his consent could do no act, in contravention of his rights as such surety. The case of *Talmadge* v. *Burlingame,* 9 Barr. Penn. R. 21, is very decisive on this subject, and establishes

the principle, "That if one becomes surety for another, at the re-
"quest of the creditor, and without the knowledge of the principal
"debtor, the creditor is bound, by all the rules respecting sureties,
"though the principal debtor is not bound, for the want of a privity
"of contract between them." If Dorwin, before the contract for
delay was made, had been called upon by the plaintiff, and had
paid the note, he would have been entitled, by subrogation, to all
the rights, and remedies of the creditor against the other parties
thereon, and would stand as a purchaser of the note. This right
of subrogation exists in equity, not only where the strict relation
of principal and surety is formed, "but where one is compelled to
"pay the debt in order to protect his own interests." 1 Lead.
Cases in Eq. 88–94, notes. In the case of *Wilkes* v. *Harper*, 2
Barb. Ch. R. 338, the chancellor observed, "that it is a well set-
"tled principle of equity, that when one person, or his property,
"stands in the situation of a surety for the payment of a debt, and
"for which payment another person or his property is primarily
"liable, the one who is secondarily liable, upon his paying the debt
"to the original creditor, is entitled to be subrogated, to all the rights
"and remedies of such creditor, as they then exist, against the prin-
"cipal debtor or his property." This rule has its foundation, not
in the contract of the parties, but in the elementary principles of
equity law. The same doctrine is sustained in the case of *Mat-
thews* v. *Aiken*, 1 Coms. 595, and 2 Lead. Cases in Eq., ¶ 2, 378, in
notes to *Rees* v. *Barrington*. Any act of this plaintiff, therefore,
that altered the terms of the original contract, or placed Dor-
win, in a situation different from what he at first assumed, would
effect his discharge on the note. After that contract for delay
was made, if the debt had been paid by Dorwin, he could not,
have been subrogated to, and prosecuted the note, without violating
the contract for delay which the plaintiff had made. He has,
therefore, been affected by that contract, in the same way, and to
the same extent, as if he had signed the note, at the request of
and as surety for, the Boyntons. And that agreement, or act of
the plaintiff, which would discharge the liability of sureties, who
signed as such, at the request of the Boyntons, will equally dis-
charge the defendant.

Neither is the relation of Dorwin to the plaintiff, affected, by his
having the obligation of Place, to indemnify him. If effects had

been placed in his hands, by the principal debtor, for the payment of the debt, possibly, that effect would follow. But no such consequences result, where securities, or contracts of indemnity, are given by one surety to another, in which the principal debtor has no claim, or interest. We think, therefore, that the agreement, made by the plaintiff with B. & H. Boynton for delay, must operate as a discharge of the defendant on the note.

The judgment of the county court is, therefore, reversed.