Johnson, J.
The note was in form the joint obligation *47 of all the makers. There was nothing to indicate that either was a surety. Prima facie, all were principals.
The pleadings admit that Daniel Broom and plaintiff in error were accommodation makers, and that Hugh Broom was the principal debtor.
The question in issue was whether Daniel Broom and Oldham were co-sureties of Hugh, or whether Oldham was the surety of both the prior makers.
They had been co-sureties on a former note, in renewal of which this was delivered to Matthews.
It was signed by Hugh and Daniel, and in that condition was presented by Hugh to Oldham (with whom there appears to have been no understanding that he should sign), with a request that he execute it. Without his signature, it was in complete form for delivery to Mathews, if acceptable to him. The defendant offered evidence tending to show that he refused to sign without an indemnity from Daniel, and thereupon Hugh presented a writing purporting to be such indemnity, and on the faith of which Oldham signed, stating at the time that he signed as surety for both, and intended to obligate himself as such, and not as co-surety with Daniel Broom. There was no communication with Daniel, or agreement or understanding with him or Hugh, other than the one just stated.
The errors complained of are :
1. The court charged the jury that, as this written indemnity was the only arrangement between plaintiff and defendant respecting this note, the verdict of the jury must depend on whether this writing was executed by plaintiff, and whether the note was executed on the faith of it.
2. The court refused to charge that if the jury found the indemnity was not in fact executed by.plaintiff, still they should go farther and look to the real nature of the transaction, and ascertain if at the time the defendant signed he intended to bind himself as a co-surety with plaintiff, or as surety for both the prior parties.
The charge given, as well as the one refused, rests on the theory that the defense depended on the validity of this *48 paper purporting to have been executed by Daniel Broom, promising to indemnify Oldham in ease he became a surety.
It took from the jury all other evidence on the issue, and made the case to depend on the genuine character of this contract of indemnity.
The jury were told that if Daniel Broom had not executed this paper the verdict must be for the plaintiff, whatever may-have been the real nature of the transaction, as disclosed by the other evidence.
The charge excluded all other facts and circumstances tending to support the issue presented by defendant, and made the verdict depend on the execution or non-execution of this paper.
This view logically led the court to refuse to charge that the jury might look beyond this paper and determine the issue from-the actual relation of the parties as shown by the other evidence.
The right of contribution among sureties is not founded in contract, but is the result of principles of equity on the ground of equality of burdens and benefits.
Eor this reason, where several parties by the same or by distinct instruments become sureties for the payment of a sum of money, and one pays more than his share, he may compel contribution from the others as co-sureties. Craythome v. Swinburne, 14 Ves. 164; Dering v. Winchelsea, 2 B. & P. 270 (1 Cox, 318).
Courts of law took jurisdiction of actions for contribution, on the ground that, as equity and good conscience demanded that as among co-sureties there should be equality of burdens, there was an implied assumpsit, which would support an action at law. De Colyer on Guar. & Sureties, 336-340; Camp v. Bostwick, 20 Ohio St. 337; 8 Am. Law Reg. 449-456; 13 Ib. 529, 536.
The plaintiff’s right of recovery does not rest on anything in the form or terms of the promissory note, for, looking to that alone, they are joint makers, and prima facie principals. If the fact appears that some of the par *49 ties are sureties of the principal debtor, then y rima fade-the law implies an obligation to contribute.
In Longly v. Griggs, 10 Pick. 121, a note was executed by A. B. and C., the last two as sureties. On the back of the note D. indorsed the words, “ I consider myself holder* as guarantor of this note,” and signed the same. It was held that D. might thus limit his undertaking, and that B. and C. could not compel him to contribute.
So in the well-considered ease of Keith v. Goodwin, 31 Vt. 268, thete was a note signed by seven persons, without anything to designate who were principals and who were-sureties. Below these names the plaintiff' and others signed the following guaranty : “ For value received we guaranty the payment of the above note.” The defendant, who was-one of the seven makers, though apparently a principal maker,, was in fact a surety. It was held that the plaintiff was surety for all the makers of the note jointly, and not a co-surety with the defendant. It is said in that ease that there was nothing on the face of the note to indicate that the makers' were anything but-joint principals, and the defendant having signed the note and intrusted it to others with author-* ity to procure additional names, it was giving them authority to represent the defendant, and, by presenting the note for additional names, a virtual representation was made that the defendant was a joint principal. It was further held that a person may, at the time of signing, stipulate with the person presenting the note as to the extent and character of his liability.
We are of opinion, also, that where,'as in this case, there is nothing in the form of the contract to indicate who are principals and who are sureties, the court may look to the nature of the transaction, to determine not only who are principals and who are sureties, but also, in actions like the present, to determine the liabilities of the parties as between themselves.
This is not parol evidence contradicting a written contract. The action is not on the note, nor, in the present *50 case, on any agreement or understanding between the plaintiff and defendant. If Oldham was, in fact, a co-surety for the principal debtor, plaintiff would have a right of action, upon making payment, without any arrangement and understanding with Oldham. If he did not know that he had a co-surety, he might compel contribution on discovering that fact. The implied assumpsit, or liability to contribute, does not depend on the existence of a contract or arrangement between the several sureties, but on the fact that they are each the sureties for the same debt or obligation.
The form of the note, the position of the parties to it, and the prima facie character of the paper, and the order in which they sign it, determine the liability of the obligors to the obligee; and parol evidence is inadmissible to vary or contradict the written contract.
Where, however, the question is one of contribution, and the nature of the transaction between the obligors shows ■they, or some of them, are sureties of others, the form of the note is no barrier to parol evidence of the actual relation of these obligors to each other.
In case of two accommodation indorsers of a note, if they jointly indorse for the principal, and either pays, he may have contribution of the other; but if they, without any -communication or understanding with each other, successively indorse, and the last indorser pays, he can recover the whole amount of the prior indorser; but if the first indorser pays the note, he can not have contribution of the last. In the first case, there is contribution, because, they •are co-sureties, and this is made to appear by parol. In the second, the whole amount is recovered, because it is the case of second indorser or holder (who, as indorser, has been compelled to take up the note) against a prior indorser, on the faith of whose indorsement he is supposed to have become liable.
In the third case, the first indorser can not have recourse ion the second, if he takes up the note, because he must look to the prior obligors.
*51 This was the case of McDonald v. Magruder, 3 Pet. 474, and is placed on the ground that the legal liability of the first indorser to the second was fixed by the form of their signing, and could not be changed “ otherwise than by an express or implied contract between the parties; ” and, as there was no such contract, the general rule of commercial law prevailed.
It is said, by C. J. Marshall “Magruder and McDonald might have become joint indorsers, and that would have been a joint promise, in which event, each would be liable for a moiety; but as they indorsed separately and successively, and there was no contract or understanding between them which might vary their legal liabilities, they remain in full force as successive indorsers.”
Where different persons successively indorse accommodation paper, before it goes into circulation, for the purpose of obtaining a discount for one of the parties, their liability to each other depends on the circumstances of the case. In an action by the holder, who was last indorser, and had taken the paper up, parol evidence was admissible to show the circumstances under which the bill was signed. Pilkin v. Flanagan, 23 Vt. 160.
In Barry v. Ransom, 2 N. Y. 465, it is said that“anagreement between co-sureties, as to their liability among themselves, in a manner different from what the law would prescribe where there was no such agreement, would not contradict any of the terms of the bond.”
So, parol evidence of extrinsic facts is admissible to rebut a presumption, arising from the face of an instrument, that all are principals. Harris v. Brooks, 21 Pick. 195.
In Keith v. Goodwin, supra, it is said “if one sign a note as surety, and intrust it to his principal, he thereby gives the latter implied authority to obtain either additional sureties or guarantors indefinitely, uutil the note is fairly launched in.the market; and one who signs as such additional surety may at the time so stipulate as not to be liable with other sureties, but as surety of the prior parties.”
In New York it is held that parol proof of extrinsic *52 facts, to show who are principals and who are sureties, or of a contract distinct from the note, between the sureties themselves, is competent; but that conversations and declarations of intention, at the time of signing, are not admissible. Barry v. Ransom, 21 N. Y. 465; Harris v. Warner, 13 Wend. 400; Norton v. Coon, 2 Seld. 33.
Judge Gray places the case last cited on the ground that such declarations are inadmissible, because they would contradict the implied liability created by signing as surety; while Gardner, J., places it on the ground that the evidence was insufficient; and the other judges concurred in the judgment, but whether on the ground stated by Gray or Gardner, does not appear. While in Wright v. Garlinghouse, a later case by the same court, it is said the prima facie character of the paper, and the liability which it imposes, are of no consequence, where it can be shown there was an agreement on the subject.
The case of Norton v. Coon, supra, would hardly be regarded as authority, even in that state, for the doctrine laid down by Judge Gardner.
In New York, it is said that parol proof is inadmissible to show the intention of a stranger to a note, who indorses his name on the back, that the law makes him an indorser, and his liability can not be changed by parol; while in-Ohio and most other states, such evidence is competent. Champion v. Lathrop, 13 Ohio, 228; Robinson v. Abel, 17 Ohio, 36; Greenough v. Smeed, 3 Ohio St. 418; Seymour v. Mackey, 15 Ohio St. 515; Bright v. Carpenter, 9 Ohio, 139. See, also, in Kelley v. Few, 18 Ohio, 441, a case of accommodation parties to a bill.-
So the findings of the court, in á former action on the note, that some were principals and some were sureties, did not conclude the parties in a subsequent action for contribution. 26 Ohio St. 000.
Parol evidence of declarations of intention made at the time of signing, before delivery of the paper, are part of the res gestoe, admissible to establish an agreement, where they do not contradict the written contract or vary the *53 rights of prior parties. Bonser v. Rendell, 31 Ind. 128; Robinson v. Lyle, 10 Barb. 512; Adams v. Flanagan, 36 Vt. 400; Apgar v. Hiler, 4 Zab. 812.
That such declarations are competent in connection with other testimony, as part of the res gestee, going to show a mutual agreement, express or implied, is supported by numerous cases. , '
The actual relations of the signers to each other and the real nature of the contract between them is the problem to be solved where the paper is silent; and even though the paper describes some as sureties, that is not conclusive, and the real purposes and objects of the paper may be shown. Adams v. Flanagan, 36 Vt. 408; Lathrop v. Wilson, 30 Vt. 604; Morris v. Faurat et al., 21 Ohio St. 155.
"Where there is no understanding with prior parties, and nothing in the form of the contract to prevent, and no fraud on the rights of the first signer, we think it is clear that another, who afterward signs as an accommodation party, may stipulate as to the terms of his liability, and that as between him and his co-obligors such terms need not be in writing. We hold further, that where the prior surety signs and intrusts the note in complete form to the principal debtor, without limitation as to his authority, he is competent to accept additional names on such terms as they may agree on, which do not change the obligation of prior parties.
Apply these principles to the ease at bar. Daniel Broom signed as surety without any agreement or understanding that Oldham should also sign. The note was complete, and might have been negotiated -without further signatures, and he could not have complained. Hugh Broom had authority to negotiate it in that condition, or, if not acceptable to the creditor," to obtain other signatures to make it so, and might therefore accede to conditions on which others were willing to sign.
The evidence tended to show that Oldham refused to sign unless indemnified, and that then Hugh presented such contract of indemnity, purporting to be signed by *54 plaintiff, and on the faith of that writing, and intending to sign as surety for both, he signed the note and delivered it to Hugh, who accepted and negotiated it.
This stipulation was one not in fraud of any right of plaintiff, and if the defendant’s proof was satisfactory to the jury, it constituted a contract limiting his liability, as he made that a condition of his becoming liable.
The plaintiff having executed this note jointly with the principal debtor and as his surety, and having in that form intrusted it to his principal to be used, impliedly authorized him to issue it as it was, or to procure such further security as would make it available, and for that purpose to accept such terms as the party signing might prescribe. If those terms were in writing, no one would doubt their force, though not made with plaintiff; but it is well settled such an agreement may be by parol.
The evidence tended strongly to show that Oldham did stipulate his terms, and that Hugh accepted the signature on the conditions prescribed.
If this contract of indemnity was a forgery, but waa relied on by Oldham, that fact is a circumstance, “ an extrinsic fact,” tending to show his intention when he signed the note.
The condition on which he agreed to sign was that the plaintiff should indemnify him. These terms seem to have been satisfactory to Hugh, as he presented a paper purporting to be executed by plaintiff as such indemnity. It was accepted as such, and on the faith of it defendant became a party to the note. It was none the less a contract because the paper he received in execution of its terms proved to be a forgery. The case, as presented to the jury, was made to turn on the genuine character of this paper. If the defense had rested on that, if it had been pleaded as the ground of defense to the action, the view of the court would have been correct; but such was not the issue presented.
It was that he signed as surety of both prior makers, and was not a co-surety.
*55 It is said in argument that this paper was a contract of indemnity for defendant’s becoming the surety of Hugh Broom, and that his signing made him a co-surety with plaintiff, relying on his indemnity to protect him, and therefore it is inconsistent now to claim he was not such co-surety, but was surety for both.
To this we answer, that although it may have been in form a contract of indemnity that is to save him harmless if he went on the note, it was in legal effect, as between plaintiff and defendant, an agreement that the plaintiff would pay the note, and would not look to defendant for contribution. If it had been genuine, it would have been a bar to this action. If not genuine, while he could not defeat a recovery on the ground that the plaintiff had bargained away his right of contribution, that did not prevent the defendant proving a contract with the principal debtor limiting his liability, where no right of plaintiff was impaired.
Eor these reasons we think the district court and the court of common pleas erred.

Judgment reversed, and cause remanded.