## ALEXANDER v. YOUNG.
### No. 813.

Circuit Court of Appeals, Tenth Circuit.
June 7, 1933.

Rehearing Denied July 10, 1933.

A. V. Roberts and C. G. Yankey, both of Wichita, Kan. (Earl Blake, Austin M. Cowan, Harold L. Blake, and J. E. Alexander, all of Wichita, Kan., on the brief), for appellant.

F. Dumont Smith, of Hutchinson, Kan. (Eustace Smith and Claude E. Chalfant, both of Hutchinson, Kan., on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

Young brought this action at law against J. E. Alexander to recover upon nine promissory notes. Trial by jury was duly waived and the cause tried by the court. The material facts are not in dispute, and are these.

Young owned a ranch in Comanche county, Kansas, subject to a first mortgage of $25,000 held by the Illinois Life Insurance Company. On March 12, 1919, he conveyed such ranch to L. D. Alexander, a brother of J. E. Alexander, for two cash payments aggregating $40,000, and deferred payments aggregating $44,800 evidenced by nine promissory notes, secured by a second mortgage on the ranch. J. E. Alexander furnished the money for the cash payments and was to receive a one-half interest in the ranch. On March 25, 1919, L. D. Alexander executed a warranty deed to such ranch to J. E. Alexander. In the fall of 1920 it developed that L. D. Alexander would be unable to carry his interest in the ranch, and J. E. Alexander agreed to take over the whole interest, and on October 1, 1920, this deed was placed of record.

On June 13, 1919, Young transferred the second mortgage notes and second mortgage to Stillwell and Allen, who prior to February 17, 1920, transferred them to J. E. Stillwell.

Default was made in the payment of the interest due in September, 1919, on the second mortgage notes and on account thereof Stillwell declared due the entire indebtedness evidenced by such notes, and on February 17, 1920, commenced a suit to foreclose the second mortgage.

On November 1, 1920, J. E. Alexander and Stillwell entered into an extension agreement which recited the execution of the second mortgage notes, the second mortgage, the transfer thereof to Stillwell, the default therein, the conveyance to J. E. Alexander, that there was then due on such notes $49,403 with interest at 10% from November 1, 1920, and that J. E. Alexander desired an extension of time for the payment thereof. It further provided as follows:

"J. E. Alexander agrees to pay to said J. E. Stillwell or his assigns as follows:

"Forty-four hundred three no/100 dollars on or before ninety days from this date, with interest at ten per cent per annum, and forty-five thousand dollars on or before one year from this date, with interest at ten per cent per annum, payable semi-annually, all payable at First National Bank, Seneca, Kansas, with privilege of making partial payments any time.

"For the convenience of said J. E. Stillwell, the said J. E. Alexander has executed his collateral notes evidencing the deferred payments, 9 notes of $5000.00 each, due Nov. 1st, 1921, and one note for $4403.00 due on or before ninety days after date, and all payments made on said collateral notes shall be credited on the mortgage notes described in said mortgage.

"The said mortgage notes to be deposited with Sunflower State Bank, Wichita, Kansas, and held by it until default be made in said collateral notes or the same are paid. When L. D. Alexander notes are returned to J. E. Stillwell, the J. E. Alexander notes are to be returned to J. E. Alexander."

J. E. Alexander executed and delivered to Stillwell the ten collateral notes referred to in such extension agreement, and Young endorsed such notes. Young had no knowledge of the extension agreement until after he had endorsed such notes. Stillwell dismissed the foreclosure proceeding. The collateral notes were dated November 1, 1920. One was for $4,403 and was due 90 days after date. The other nine were for $5,000 each and were due one year after date.

Thereafter Stillwell endorsed and delivered such collateral notes to various persons,

who endorsed and delivered them to Fred E. Graham.

On December 2, 1921, Graham brought an action against Young upon the collateral notes in the Superior Court of Los Angeles County, California. During the progress of the trial in that action, Graham received from Stillwell and tendered into court the second mortgage notes, the second mortgage, and an assignment of such mortgage to Young to be delivered to the latter when he responded to the relief demanded in that action. Young defended the action on the ground that his endorsement was secured through misrepresentations made by Stillwell, and that Graham took with notice thereof. Young prevailed except as to one note, as to which the court held that Graham was a bona fide holder for value. Judgment for $5,819.44 was entered in favor of Graham upon such note (being the note sued on in the second cause of action herein), and for Young on the remaining notes.

Young tendered the amount of such judgment to the clerk of the court, and brought an action in the superior court of Los Angeles county, California, to require the clerk to deliver to him such second mortgage notes, second mortgage, and assignment. On October 22, 1923, judgment was rendered in the last mentioned action directing the clerk to receive the sum of $6,396.40, the amount due on such judgment against Young, and to deliver to Young the second mortgage notes, second mortgage, and assignment. The amount was paid and the clerk delivered to Young the second mortgage notes, second mortgage, and assignment, and also the ten collateral notes.

Thereafter on December 2, 1922, the Life Insurance Company brought suit in the district court of Comanche county against Young, Stillwell, L. D. Alexander, and J. E. Alexander to foreclose the first mortgage. On December 22, 1922, Stillwell filed a cross-petition therein seeking judgment against L. D. Alexander as the maker and Young as the endorser of the second mortgage notes, and for the foreclosure of the second mortgage. Young filed an answer and cross-petition in which he alleged the judgments in the actions in the California court as a bar to the action against him upon the second mortgage notes, and further alleged that, by virtue of his payment of the Graham judgment, he was an equitable assignee of one of the second mortgage notes, and sought a judgment in his favor upon one of such notes, and for a foreclosure of the second mortgage.

for the satisfaction thereof. Neither Stillwell nor Young sought a personal judgment on his cross-petition against J. E. Alexander.

Judgment of foreclosure was entered on the first mortgage, and on July 16, 1923, the ranch was sold in two parcels to satisfy the first mortgage indebtedness.

On May 20, 1924, judgment was rendered in favor of Stillwell on his cross-petition against L. D. Alexander as principal and Young as endorser of the second mortgage notes for $66,579.77, less $6,396.40 paid by Young on the Graham judgment. Young was denied relief on his cross-petition. At the close of the trial on the cross-petition, counsel for Young challenged the right of the court to enter such judgment until the collateral notes had been surrendered and canceled. Counsel for Young then had such notes in his personal possession. Stillwell stated in the presence of counsel for Young that he was making no claim on such notes, and would secure a statement from J. E. Alexander that they had been canceled. The court directed that entry of the judgment be withheld until such statement was secured. On May 21, 1924, Stillwell wrote a letter to J. E. Alexander in which he stated the result of the proceedings on the cross-petitions, the direction of the court as to withholding entry of judgment, and further said,

"I assure you that neither myself nor my assignees will ever claim anything on account of those notes, and I hereby release you from all liability thereon; kindly write Judge Day that you are satisfied that your liability on those notes has terminated and that you consent that the judgment be entered."

Young learned of such release one year after it was given. J. E. Alexander wrote to the judge of the district court of Comanche county as requested.

Young appealed from the judgment on the cross-petitions, and on April 11, 1925, it was affirmed by the Supreme Court of Kansas. Illinois Life Ins. Co. v. Young, 118 Kan. 308, 235 P. 104.

Thereafter Stillwell secured a judgment in a California court against Young on the judgment recovered by Stillwell in the foreclosure suit. On June 15, 1926, Young paid Stillwell the amount of the judgment recovered by the latter in the California court, and Stillwell assigned such judgment and the collateral notes to Young.

About July 1, 1922, after the trial in the case of Graham v. Young in the California court, Stillwell informed J. E. Alexander of

the result of such trial, and requested Alexander to give him new notes in full satisfaction of J. E. Alexander's liability under the extension agreement. Stillwell stated that the collateral notes had been introduced in the trial of Graham v. Young and were then in the hands of the clerk of the California court, and that he would endorse such new notes to the persons then owning the collateral notes.

J. E. Alexander accepted Stillwell's proposition and executed and delivered to Stillwell new notes dated July 1, 1922, due in one year aggregating $57,653, being the amount due on the old notes with accrued interest. At the same time Stillwell executed and delivered to J. E. Alexander a memorandum which described the old notes and the new notes, the persons to whom the new notes were to be transferred, and further read as follows:

"The above notes (except the last 2) (interest) are given as renewal notes for the first series mentioned and represent the amount due J. E. Stillwell and his assigns on the L. D. Alexander notes which L. D. Alexander notes are secured by Mtg., and upon payment of the last above notes J. E. Stillwell and his assigns shall assign and transfer to J. E. Alexander or anyone he may designate, said L. D. Alexander notes and all security held or arising therefrom."

· The notes of July 1, 1922, were renewed July 1, 1923. The notes of July 1, 1923, were renewed August 1, 1924, for $61,000, as collateral security for the judgment recovered by Stillwell in the foreclosure suit with accrued interest. At the time the 1924 renewal notes were given, Stillwell executed and delivered to Alexander the following memorandum:

"I am enclosing notes of even date for your signature, if you find the same correct, the same to be sent to Stillwell & Allen, Seneca, Kansas, and to take the place of all the notes you have heretofore executed to me and not heretofore surrendered, except one note of $5,000 dated May 1st, 1924.

"These notes are given as collateral security for the payment of a certain judgment rendered by the District Court of Comanche Co., Kansas, on or about May 30th, 1924, in favor of J. E. Stillwell and against L. D. Alexander and Jessie W. Alexander and William F. Young for $60,183.37 with interest at 10 per cent.

"All amounts collected on said judgment shall be credited on these notes or any renewals thereof.

"It is understood and agreed that the notes hereby to be given are for the exclusive benefit of myself and my assigns as collateral security for the payment of said judgment, and shall in no event be for the benefit of said L. D. Alexander, Jessie W. Alexander, or William F. Young."

Thereafter renewal notes were executed by J. E. Alexander to Stillwell on February 10, 1925, August 11, 1925, and February 5, 1926, respectively, as collateral security for such judgment.

After Young had paid the judgment recovered by Stillwell in the California court, Stillwell returned to J. E. Alexander the last renewal notes, excepting one which had passed into the hands of a third person. J. E. Alexander paid the last mentioned note in 1928.

J. E. Alexander redeemed one parcel of the ranch at foreclosure sale on October 31, 1924. He also transferred the right to redeem the other parcel to his brother, Earl E. Alexander, and the latter redeemed such parcel on July 16, 1924.

The original action herein was filed September 27, 1926. In his first cause of action of the second amended petition, Young alleged that on November 1, 1920, J. E. Alexander for a valuable consideration executed and delivered his promissory note to Stillwell, whereby he promised to pay Stillwell $5,000 one year after date with interest at 10% per annum from date; that for a valuable consideration Young endorsed such note and that on June 15, 1926, Stillwell, the payee of such note, for a valuable consideration, to wit, the payment of such note by Young, duly assigned such note to Young. He made like allegations as to the remaining eight notes in the second to ninth counts, inclusive. He further set up the execution and delivery by L. D. Alexander of the second mortgage notes and second mortgage, the transfer thereof to Stillwell, the commencement of the first foreclosure proceeding by Stillwell, the execution of the extension agreement and collateral notes by J. E. Alexander, and the endorsement of such collateral notes by Stillwell to various parties; and alleged that "Stillwell remained at all times the owner of said notes" except the note set up in the second cause of action, and

"That thereafter and on June 15th, 1926, this plaintiff (Young) paid to the said Stillwell the full amount, with interest, of all of the notes herein set out and which were then in plaintiff's possession, and the said Stillwell thereupon executed the assignment

whereby this plaintiff became the sole owner and holder of all of said notes and is entitled to recover thereon."

On April 6, 1932, Young filed an amendment to his second amended petition in which he alleged the judgment recovered by Stillwell in the foreclosure suit, that on June 15, 1926, he paid Stillwell. $66,000 in satisfaction of such judgment, and that Stillwell, as a part of the consideration for such payment, assigned to Young the notes referred to in counts one to nine, inclusive, and prayed for judgment for $45,000 with interest at 10% per annum from November 1, 1920, or, in the alternative, for $66,000 with interest at 6% per annum from June 15, 1926.

The judgment in the district court of Comanche county was alleged for the first time in the third amended petition.

Counsel for J. E. Alexander moved to strike the third amended petition on the grounds that it set up an additional cause of action for subrogation cognizable only in equity; that such additional cause of action was barred by the statute of limitation; and that there was a misjoinder of causes of action. On the hearing on such motion counsel for Young announced that the action was at law on the nine promissory notes; that Young did not intend by the new matter alleged in the third amended petition to set up a new or additional cause of action; and that such new matter was set up in order that the recovery might be limited to the amount of the judgment recovered by Stillwell in the foreclosure proceedings, with interest, in the event the court should conclude it should be so limited.

The court held. that Young was bound by the construction placed on the third amended petition by his counsel, and overruled the motion to strike.

The trial court further held that, upon the execution of the extension agreement and the collateral notes, J. E. Alexander became the principal debtor and Young became his surety; that, when Young paid the Graham judgment on the note set out in the second count of the second amended petition herein, he became subrogated to the rights of Stillwell and his successor in title (Graham) against J. E. Alexander on such note; that, when Young paid the Stillwell judgment, he became subrogated to the rights of Stillwell against J. E. Alexander on the notes set up in the first count, and third to ninth counts inclusive, of the second amended petition herein; that Stillwell had no power to discharge the collateral notes without the consent of Young; and that Young was entitled to judgment against J. E. Alexander on the second cause of action for the amount paid by Young on the Graham judgment, and on the remaining causes of action for the amount paid by Young on the Stillwell judgment in the foreclosure suit, with interest at 6% per annum from the date of such payments. Judgment was entered accordingly, and J. E. Alexander has appealed.

■ Notwithstanding Young endorsed the collateral notes after delivery thereof, under the provisions of section 52—604, R. S. Kan. 1923, as construed by the Supreme Court of Kansas in John Deere Plow Co. v. Losey, 104 Kan. 400, 179 P. 358, he became an endorser of such notes rather than a guarantor.

1. The Collateral Note on Which Graham Recovered Judgment.

■ In order for the relation of suretyship to arise between a debtor as principal and another, it is essential that the latter become surety at the request of or with the assent of the former (Snell v. Warner, 63 Ill. 176; Hughes v. Littlefield, 18 Me. 400; McPherson v. Meek, 30 Mo. 345; Lathrop v. Wilson, 30 Vt. 604; Peake v. Dorwin's Estate, 25 Vt. 28), or that the former have notice of and accept the latter's assumption of the relation. Craig v. Vanpelt, 3 J. J. Marsh (Ky.) 489; Lachman v. Block, 47 La. Ann. 505, 17 So. 153, 28 L. R. A. 255; Taff v. Larey, 29 Ga. App. 631, 116 S. E. 866.

■■ But where a person undertakes to be bound as surety at the request of or with the assent of the creditor alone, between him and the creditor the relationship is that of surety and is attendant with all the rights and liabilities that flow therefrom. Peake v. Dorwin's Estate, supra. Such being the relationship between the creditor and the surety, the latter, upon payment of the debt, is subrogated to the rights of the creditor therein. The surety's right of subrogation in such a case is not predicated upon contract, but upon principles of natural justice, and it is immaterial that the principal did not request the surety to assume the relation or assent thereto. Sloat-Darragh Co. v. General Coal Co. (C. C. A. 6) 276 F. 502; Bankers' Surety Co. v. Linder, 156 Iowa, 486, 137 N. W. 496; Davis v. Schlemmer, 150 Ind. 472, 50 N. E. 373, 375; Mathews v. Aikin, 1 N. Y. 595. While the surety in such a case has no right to reimbursement predicated upon an implied promise of indemnity from the principal (Leslie v. Compton, 103 Kan. 92, 172 P. 1015, 1017, L. R. A. 1918F, 706; Chaf-

fin v. Campbell, 4 Sneed [Tenn.] 184), he is subrogated to the rights of the creditor. The debt on the payment by the surety is not discharged but passes by operation of law to the surety [Leslie v. Compton, supra; Briscol v. American Southern Trust Co., 176 Ark. 401, 4 S.W.(2d) 912; Kirk v. Collier (Tex. Civ. App.) 28 S.W.(2d) 1087; Clark v. Northern Pac. R. Co., 55 N. D. 454, 214 N. W. 33, 36; Krotine v. Link, 36 Ohio App. 537, 173 N. E. 443, 444. See, also, note, L. R. A. 1918 F. 709], and he may recover thereon in an action at law [Sloat-Darragh Co. v. Coal Co., supra; Dunlop v. James, 174 N. Y. 411, 67 N. E. 60; Offer v. Superior Court, 194 Cal. 114, 228 P. 11; Krotine v. Link, supra].

[redacted] It follows that Young was entitled to recover on such note, in an action at law, the amount he paid in the discharge of the Graham judgment, with interest. At common law the action would have had to be brought in the name of Graham for the use and benefit of Young. But, under section 60—401, R. S. Kan. 1923, which provides that "every action must be prosecuted in the name of the real party in interest," and which, under the Conformity Act (28 USCA § 724) governs procedure in actions at law in the District of Kansas, Young had the right to prosecute the action in his own name. Sloat-Darragh Co. v. Coal Co., supra; Offer v. Superior Court, supra, page 114 of 194 Cal., 228 P. 11.

### 2. The Remaining Eight Collateral Notes.

[redacted] When Young transferred the second mortgage notes to Stillwell, he became liable thereon as endorser, and upon payment of such notes he became subrogated to the then existing rights of Stillwell as against all persons primarily liable thereon and to all collateral then held by Stillwell as security therefor.

We shall assume, but do not decide, that the extension agreement made J. E. Alexander liable as a principal for the debt evidenced by such second mortgage notes. It will be noted that this action is predicated solely on the collateral notes, and not on the extension agreement, the Stillwell judgments, nor the renewal notes given by J. E. Alexander to Stillwell. The question then is, was Young subrogated to any claim against J. E. Alexander on such collateral notes, when Young discharged the indebtedness evidenced by the second mortgage notes through the payment of the Stillwell judgment.

[redacted] One who acquires or succeeds to rights, claims, or securities through subrogation takes them burdened with the limitations and disqualifications to which they were subject in the hands of the person for whom he is substituted. The rights he acquires thereby are not greater nor better than those which the person for whom he is substituted had at the time of the payment which effected the subrogation. Swarts v. Siegel (C. C. A. 8) 117 F. 13, 15; Globe & Rutgers Fire Ins. Co. v. Hines (C. C. A. 2) 273 F. 774; In re Paoli Lithia Springs Hotel Co. (C. C. A. 7) 5 F.(2d) 902, 904; Phœnix Ins. Co. v. Erie & Western Transportation Co., 117 U. S. 312, 321, 322, 6 S. Ct. 750, 29 L. Ed. 873; American Surety Co. v. School Dist. 64, 117 Neb. 6, 219 N. W. 583, 588.

[redacted] Since subrogation is limited to such rights as the creditor has at the time of payment by the surety, the surety is not subrogated to a right which originally existed in favor of the creditor, but which the latter released or discharged before payment by the surety. Globe & Rutgers Fire Ins. Co. v. Hines, supra; Leach v. Commercial Sav. Bank, 205 Iowa, 1154, 213 N. W. 517, 520; American Surety Co. v. School Dist., supra; Tarbell v. Parker, 101 Mass. 165; George v. Somerville, 153 Mo. 7, 54 S. W. 491, 493.

[redacted] Under the terms of the extension agreement, Stillwell was to return the collateral notes to J. E. Alexander when the Sunflower State Bank delivered the second mortgage notes to Stillwell. The bank returned the second mortgage notes to Stillwell prior to the rendition of the Graham judgment. Stillwell discharged such collateral notes by taking renewal notes therefor, prior to the Stillwell judgment in the foreclosure suit. At the close of the trial in the foreclosure suit, Stillwell formally renunciated the collateral notes on the demand of counsel for Young. Such renunciation, being after the maturity of the collateral notes, effected a discharge thereof. Section 52—904, R. S. Kan. 1923. Shortly after such trial, Stillwell executed and delivered to J. E. Alexander a written release of such notes.

[redacted] Since Stillwell the creditor had no rights under such collateral notes at the time Young paid the Stillwell judgment, it follows that no rights thereunder passed to Young by subrogation.

[redacted] Since such notes were past due at the time of the assignment thereof by Stillwell to Young, the right of J. E. Alexander to the

return thereof, which arose when the Sunflower State Bank returned the second mortgage notes to Stillwell, and the prior release and discharge of the collateral notes by Stillwell, were defenses available to J. E. Alexander in this action. Sections 52—502, 52—508, R. S. Kan. 1923. The evidence clearly established such defenses. It follows that the court erred in giving judgment on the eight remaining collateral notes.

Young could have set up the release of such collateral notes by Stillwell as a defense to the action in which Stillwell recovered judgment in the California court, if it effected a discharge of his liability as endorser on the second mortgage notes. Bangs v. Strong, 4 N. Y. 315; Taylor v. Simpkins, 38 Misc. 246, 77 N. Y. S. 591; Insley v. Webb, 122 Wash. 98, 209 P. 1093, 41 A. L. R. 274; Dixon v. Ewing's Adm'r, 3 Ohio, 280, 17 Am. Dec. 590; Baird v. Rice, 1 Call (5 Va.) 18, 1 Am. Dec. 497.

The judgment is reversed with instructions to grant J. E. Alexander a new trial. Nine-tenths of the costs will be assessed against Young, and one-tenth against J. E. Alexander.